419 F.2d 187
 Ronald Kenneth SCHATTEN, Petitioner-Appellant,
v.
UNITED STATES of America: General Leonard Chapman,
Commandant, United States Marine Corps; Commanding Officer,
1st Battalion, 24th Marines, 4th Marine Division, United
States Marine Corps Reserves; and Inspector-Instructor for
1st Battalion, 24th Marines, 4th Marine Division, United
States Marine Corps Reserves, Respondents-Appellees.
 No. 19233.
 United States Court of Appeals Sixth Circuit.
 Nov. 28, 1969.
 
 Sheldon M. Meizlish, Detroit, Mich. (Sharples, Klein, Meizlish & Sugarman, Detroit, Mich., Boaz Siegel, Detroit, Mich., of counsel, on the brief), for appellant.
 Joseph P. Zanglin, Detroit, Mich. (Robert J. Grace, U.S. Atty., Joseph P. Zanglin, Asst. U.S. Atty., Detroit, Mich., on the brief), for appellees.
 Before WEICK, CELEBREZZE and PECK, Circuit Judges.
 CELEBREZZE, Circuit Judge.
 
 
 1
 This is an appeal from a denial of a petition for a writ of habeas corpus by the United States District Court for the Eastern District of Michigan. The Appellant was ordered to 16 months' involuntary active duty in the United States Marine Corps, one month prior to the expiration of his six-year enlistment in the Marine Corps Reserve, upon a determination by his superiors that he had not satisfactorily performed his Reserve obligation. 10 U.S.C. 673a (1967). The Appellant brought action to test the legality of those orders. Upon hearing, the District Court orally dismissed the Appellant's petition, and granted a stay of his orders pending this appeal.
 
 
 2
 On September 28, 1962, the Appellant enlisted in the United States Marine Corps Reserve for a six-year period. With one minor exception, occurring in 1964, the Appellant performed satisfactorily until June and July in 1968. On the weekend of June 22-23, 1968 the Appellant was absent from four unit drills. These absences were caused, the Appellant claims, because he received no notification of the drills, which had not been regularly scheduled, but were extra drills devoted to riot control training. The absences were recorded by the Appellant's commanding officer as unexcused. Shortly thereafter, on the weekend of July 13-14, the Appellant again missed four drills, contending that he was ill. Undisputed testimony and the deposition of his doctor presented in the District Court, support the Appellant's contention that he was bedridden with gastroenteritis that weekend.
 
 
 3
 Before the Appellant could submit medical documentation of his illness, he was advised by his commanding officer, in a letter dated July 14th,[1] that his July absences would be recorded as unexcused; and that the Commandant of the Marine Corps would be requested to involuntarily activate the Appellant for two years on the ground that the Appellant had not satisfactorily fulfilled his statutory service obligation.[2] At no time prior to his commanding officer's decision was the Appellant given a hearing to determine whether his June and July absences should be recorded as unexcused. Article 138 of the Uniform Code of Military Justice, 10 U.S.C. 938 (1956) authorizes any member of the armed forces who believes himself wronged by his commanding officer to complain to any superior commanding officer, who shall forward the complaint to the officer exercising general courts-martial jurisdiction over the officer against whom the complaint is made. The officer exercising courts-martial jurisdiction is required to examine the complaint and to redress the wrong complained of. The record suggests that the Appellant attempted to exercise his right under Article 138 by asking his commanding officer for permission to speak to the commanding officer's superior. The Appellant's request was, apparently, turned down with no explanation given. The Appellant may well have taken this denial as an indication that there was nothing further he could do.
 
 
 4
 By letter dated August 19, 1968, the Commandant of the Marine Corps ordered the Appellant to active duty for 16 months (24 months less the amount of time the Appellant had already put in on active duty). See 10 U.S.C. 673a (1967).[3] Shortly thereafter, the Appellant's legal counsel requested an interview with the Commandant to discuss whether there was a basis in fact for the Commandant's finding that the Appellant had not satisfactorily performed his service obligation. The request was denied.
 
 
 5
 Generally speaking, habeas corpus is available to a petitioner who is entitled to release from unlawful restraint, and is not a means of testing the conditions of admittedly lawful custody. Harris v. Nelson, 394 U.S. 286, 290-291, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969); Walker v. Wainwright,390 U.S. 335, 336, 88 S.Ct. 962, 19 L.Ed.2d 1215 (1968), rehearing denied,390 U.S. 1036, 88 S.Ct. 1420, 20 L.Ed.2d 299. See, e.g., Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). It is unnecessary for this Court to decide whether or not habeas corpus is available where a reservist is transferred to active duty status, Cf. Mempa v. Rhay,389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); Ex. parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941); Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 218, 50 S.Ct. 320, 74 L.Ed. 809 (1930), since the District Court was free to treat the petition as one for mandamus under 28 U.S.C. 1361 (1962), Smith v. Resor, 406 F.2d 141 (2d Cir. 1969); United States ex rel. Schronbrun v. Commanding Officer, 403 F.2d 371 (2d Cir. 1968), cert. denied, 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (Mar. 24, 1969); Cf. Walker v. Blackwell, 360 F.2d 66 (5th Cir. 1966); Smith v. United States Air Force, 280 F.Supp. 478 (E.D.Pa.1968). 28 U.S.C. 1361 provides: 'The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.'
 
 
 6
 Marine Corps Bulletin 1001R (April 17, 1968) authorizes commanding officers to grant excused absences for emergency situations. Among the emergency situations enumerated in Bulletin 1001R is:
 
 
 7
 'd. When a member is ill or suffering from an accident and the attending physician certifies that attendance at the drill will be injurious to the welfare of the member.' M.C.Bull. 1001R(2)(d).
 
 
 8
 This provision would presumably control in determining whether the Appellant's July absences should have been excused. With regard to the June absences, his commanding officer testified that it was irrelevant whether the Appellant received notification or not; the absences would be deemed unexcused. Although Bulletin 1001R does not specify lack of notification as a ground for excuse, we do believe, without deciding whether the Appellant received notice of the four extra June drills, that lack of notice is a factor to be considered in a determination of whether the June absences should be recorded as unexcused. No individual should be penalized for reasons which are beyond his control. See Unit Order 1571R(4)(b) (April 17, 1968). Although Bulletin 1001R grants discretion over absences to commanding officers, the commanding officer's exercise of discretion is subject to military review. See 10 U.S.C. 938 (1956); Bulletin 1001R(3)(k); Marine Corps Manual 1701 (Change 1, Feb. 7, 1964).
 
 
 9
 Recent decisions have indicated that purely discretionary decisions by military officials which are within their valid jurisdiction will not be reviewed by the federal courts. E.g., Winters v. United States, 281 F.Supp. 289 (E.D.N.Y.1968); aff'd. per curiam, 390 F.2d 879 (2d Cir. 1968) cert. den. 391 U.S. 910, 88 S.Ct. 1800, 20 L.Ed.2d 650, cert. den. 390 U.S. 993, 88 S.Ct. 1193, 20 L.Ed.2d 93; Winters v. United States, 412 F.2d 140 (9th Cir. 1969); Fox v. Brown, 402 F.2d 837 (2d Cir. 1968). Our reluctance to review discretionary military orders does not imply that any action by the Marines, even one violative of its own regulations, is unreviewable judicially. See 4 Davis, Administrative Law Treatise, 28.01, 28.16. Where Congress or administrative agencies themselves lay down procedures and regulations, these cannot be ignored in deference to administrative discretion. Smith v. Resor, 406 F.2d 141 (2d Cir. 1969). See United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); Yellin v. United States, 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1963).
 
 
 10
 His commanding officer's abrupt refusal to permit the Appellant to exhaust his military remedies must be taken as violative not only of 10 U.S.C. 938 (1956), but also of Marine Corps Bulletin 1001R. The Appellant's excuses, if properly documented, must be considered in the context of the appropriate sections of Bulletin 1001R and Unit Order 1571R. Although it is not this Court's function to 'direct the exercise of judgment or discretion in a particular way,' Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 218, 50 S.Ct. 320, 324 (1930), it is not inappropriate that this Court require the proper authorities to temper the exercise of their discretion with the laws of the United States and their own regulations.
 
 
 11
 This cause is remanded to the District Court with the suggestion that it treat the action as a mandamus proceeding, pursuant to the mandamus jurisdiction given it by 28 U.S.C. 1361. We further instruct the District Court to direct the United States Marine Corps to permit the Appellant to avail himself of the procedures the Marine Corps has established for review. The stay of the involuntary activation, which the District Court initially put into effect, shall be continued until the course of action set forth above is completed.
 
 
 
 [1]
 In a letter mailed by his commanding officer earlier that day, the Appellant was invited to submit medical documentation of his July illness to the commanding officer. That letter was countermanded the same day by the letter referred to in the body of the opinion. This second letter indicated that the commanding officer was firmly resolved to request that the Appellant be activated; therefore, the Appellant regarded documentation as futile
 
 
 [2]
 The sole bases for the commanding officer's finding of unsatisfactory performance were the unexcused June and July absences. The record indicates that the Appellant's questionable performance in 1964 was either deemed irrelevant, or had been waived as a ground for involuntary activation by the Marines
 The sole Congressional standards for determining satisfactory and unsatisfactory performance are set forth in 10 U.S.C. 270 (1958), which provides:
 'Each person who is inducted, enlisted, or appointed in an armed force * * * and who becomes a member of the Ready Reserve * * * shall be required, while in the Ready Reserve, to-- (1) participate in at least 48 scheduled drills or training periods during each year and serve on active duty for training not more than 17 days during each year * * *.'
 Pursuant to the authority vested in him by 10 U.S.C. 270(b), the Secretary of Defense promulgated Department of Defense Directive 1215.5, the present version of which is similar in all relevant respects. See 32 C.F.R. Part 101, as revised February 21, 1968, 32 F.R. 3278-79. The purpose of this regulation was to define with specificity the standards for determining satisfactory and unsatisfactory performance under 10 U.S.C. 270. Under 32 C.F.R. 101.3, which was in force when the Appellant enlisted and which has not been modified since, a member of the Ready Reserves is required to participate in not less than 48 drills in any year unless excused. This regulation authorized the Secretaries of the Armed Forces to grant excused absences from drills and from annual active duty for training where 'sickness, injury, or some other circumstance beyond an individual's control' prevents his attendance. 32 C.F.R. 101.3(c)(2) (ii). 32 C.F.R. 101.3(c)(2) also indicates that '10 percent unexcused absences from scheduled drills or training periods' may be tolerated.
 At the time the Appellant enlisted, he signed, what purported to be, two contracts with the Marine Corps. The first, his 'Enlistment Contract and Record,' provided:
 '37. I understand that upon enlistment in the Reserve of the United States Marine Corps, or upon transfer or assignment thereto, I may not be ordered to active duty without my consent except in time of war, or when in the opinion of the President a national emergency exists, or when otherwise prescribed by law, * * *.'
 The second document, captioned 'Statement of Understanding Upon Enlistment in Marine Corps Reserve' purported to 'explain' to the Appellant 'the duties, responsibilities, and obligations imposed, and the benefits to be derived' from enlistment, to-wit:
 'd. Under current Selective Service Regulations I will not be inducted so long as my participation as a member of the Marine Corps Reserve is satisfactory. 'e. I will be required to attend drills and training periods as prescribed, both prior to and following my six month period of active duty for training in order to remain in good standing for purposes of maintaining my proficiency and delay or deferment in call of Selective Service for induction. 'f. I UNDERSTAND that SATISFACTORY PARTICIPATION consists of ATTENDANCE AT and SATISFACTORY PERFORMANCE of at least 90% Of all scheduled drills and not to exceed 17 days of active duty for training each year with the unit to which attached, or if I am subsequently transferred to the Voluntary Ready Reserve, performance of active duty for training not to exceed-- (unclear) days each year.'
 Clearly, insofar as they are relevant, these terms of the Appellant's 'Enlistment Contract' and 'Statement of Understanding' must be taken as prescribing standards for determining whether or not he has satisfactorily performed his Reserve obligation.
 To further elucidate the standards of satisfactory performance for a Ready Reservist, the Commandant of the Marine Corps promulgated Marine Corps Bulletin 1001R (Apr. 17, 1968) and Unit Order 1571R (April 17, 1968) which further refined the standards in DoD Directive 1215.5 and 10 U.S.C. 270. In addition to prescribing further standards for granting excused absences, this Bulletin purported to change the attendance requirements at drills from 90% To 100%. We do not decide the extent to which M.C.Bull. 1001R effectively modified these terms of the Appellant's enlistment. We do note, however, that both the Marine Corps and the Appellant agreed to the terms of the 'Enlistment Contract' and 'Statement of Understanding' at the time these documents were executed.
 
 
 [3]
 Not to be confused with 10 U.S.C. 673(a) (1956) which authorizes the President to call up the Reserves in time of national emergency or war. Section 673a provides:
 673a. Ready Reserve: members not assigned to, or participating satisfactorily in, units
 (a) Notwithstanding any other provision of law, the President may order to active duty any member of the Ready Reserve of an armed force who--
 (1) is not assigned to, or participating satisfactorily in, a unit of the Ready Reserve;
 (2) has not fulfilled his statutory reserve obligation; and
 (3) has not served on active duty for a total of 24 months.
 (b) A member who is ordered to active duty under this section may be required to serve on active duty until his total service on active duty equals 24 months. If his enlistment or other period of military service would expire before he has served the required period under this section, it may be extended until he has served the required period.
 (c) To achieve fair treatment among members of the Ready Reserve who are being considered for active duty under this section, appropriate consideration shall be given to--
 (1) family responsibilities; and
 (2) employment necesssary to maintain the national health, safety, or interest.