**James Andrew MILLER, Plaintiff and Petitioner,**

v.

**Melvin LAIRD, as Secretary of Defense, et al., Defendants and Respondents.**

**No. C–70 328.**

United States District Court,
N. D. California.

April 28, 1970.

Joseph Morozumi, Oakland, Cal., for plaintiff and petitioner.

James L. Browning, Jr., U. S. Atty., Jerry K. Cimmet, Asst. U. S. Atty., San Francisco, Cal., for defendants and respondents.

1. S. 1042, 90th Cong., 1st Sess. (1967).

2. See S. 1042, 90th Cong., 1st Sess. § 294 (1967).

3. See S. 1246, 91st Cong., 1st Sess. (1969).

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND DISCHARGING PETITIONER FROM CUSTODY.

ZIRPOLI, District Judge.

Petitioner raises a myriad of claims. He argues that the Army had no basis in fact for denying his claim for discharge as a conscientious objector; that he was denied due process because he had to wait almost two years to have his application processed; that he was denied due process because the processing of conscientious objector applications are under regulations which do not set forth the burden the applicant must meet.

With regard to his call to active duty, petitioner raises two claims which may have some merit: (1) that he was denied due process in that he did not receive a hearing prior to the call for active duty on the issue of whether he had in fact violated Army Reserve regulations; (2) that he was denied due process in that the Army did not process his complaint against his commanding officer.

The court does not reach the above issues because it has found that no basis in fact existed for the Army's denial of petitioner Miller's claim for discharge as a conscientious objector.

The following is a chronology of the relevant facts:

Petitioner enlisted in the Army Reserve in 1964. He applied for conscientious objector discharge in August, 1967. The Army did not process his claim but improperly gave him the option of joining his reserve unit just assigned or having his conscientious objector application processed. Petitioner did not join his unit and such assignment orders were cancelled. In January, 1969, the Army reassigned him to a reserve unit. On January 27, 1969, petitioner renewed his request for a conscientious objector discharge. On April 9, 1969, he again renewed such request. On April 12, 1969, he was called to active duty for missing five reserve meetings. On May 26, 1969, he again renewed his request. On June 18, 1969, he was interviewed by the psychiatrist, chaplain and hearing officer. On September 20, 1969, petitioner was allowed to amend his 1967 C.O. application. On December 10, 1969, the Conscientious Objector Review Board denied his claim, finding him insincere and finding that his claim was based on a purely personal moral code.

An analysis of the Review Board's findings shows that their decision was based on an incorrect interpretation of the law. The Board's first reason for denial is that petitioner's application contained four and one-half pages of "personal moral code." This is clearly incorrect, as the pages in question state a prima facie case of religious objection under the principles of United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965).

Petitioner speaks of "the soul"—his soul—a universally recognized concept of religion. He stated that "this process" is "superior to ordinary human endeavor" and that it is "superior in that it is more comprehensive *than anything a human might conceive*." (Emphasis added). "This supreme process, supreme existence," he wrote, "demands that man should do his duty to himself and his fellow man. The supreme process involves duties superior to those arising from any human relation." "To kill man is to destroy the infinite, to destroy the highest process of nature, the highest meaning * * * a sin."

Petitioner speaks of his belief that destructive tendencies in man must be integrated "through * * * religious communion" among other things. He speaks of his belief "that in an encounter with 'God' and with itself, the human spirit dissolves * * * (into) the pure Absolute values—of Love, etc. * * * As to the nature of my beliefs: I cannot say what the exact nature of them is— they are a part of my perceived world, they are an experience. I can give no explanation as to why I have them except to say that it is part of human nature to

have them or that through the grace of some deity they were given to me."

The Board's second reason was that "[t]he long list of individuals * * * who had 'probably' influenced his beliefs were composed mainly of great philosophers, strong military leaders and individuals with strong philosophical and sociological contributions to history. Great religious figures were a very weak minority."

Petitioner stated that those on the list influenced him *negatively* as well as positively. Obviously the inclusion of Hitler, Napoleon, Mao Tse Tung and others were those who affected him in a "negative sense."

■ Among the "religious" figures were included St. Francis of Assisi, St. Augustine, Jesus, Ghandi and others. The fact that these great religious figures were in a *numerical* minority is irrelevant. As stated by the courts the requirement for conscientious objection is that a person be influenced to some extent by religious training and belief. See Fleming v. United States, 344 F.2d 912, 915–916 (10th Cir. 1965); Browning v. Laird, No. 50868 (N.D.Cal. Dec. 8, 1969).

The Board's third reason was that petitioner's letter of September 20, 1969 was "viewed as a transparent subterfuge." There is nothing in the letter which would give rise to such a conclusion. It only strengthens his prior application. Pages two and three referred to by the Board relate petitioner's present convictions to the basic tenets of Lutheranism, the religion of his childhood. He then reiterates that his religious convictions crystallized through a process of meditation during his time in the Army.

■ The Board for its fourth reason states that the "applicant does not rely on anyone * * * for religious guidance." This is not a proper standard for refusing a man status as a conscientious objector. Petitioner herein submitted the names of those figures whose philosophy and teachings he relies on; there is no need to have submitted individuals alive and personally known to petitioner.

■ The Board's fifth reason is that "[h]is qualification on the use of force is inconsistent with the stand normally taken on this subject by the true pacifist." The Army is using an incorrect legal standard. One does *not* have to be a "pacifist" to satisfy the c. o. requirement. Sicurella v. United States, 348 U.S. 385, 389, 75 S.Ct. 403, 99 L.Ed. 436 (1955); United States v. James, 417 F.2d 826, 828, 831 (4th Cir. 1969); United States v. Owen, 415 F.2d 383, 390 (8th Cir. 1969). One only has to be against participation in war in any form. Self-defense and defense of one's friends or community are recognized as legitimate beliefs of the conscientious objector by the above cases.

The Board's next reason is based on its unsubstantiated interpretation of petitioner's letter of May 26, 1969. The Board states that petitioner "qualified his claim by seemingly propositioning or bargaining with the U. S. Army."

In May, 1969, petitioner wrote this letter stating he would go to the reserve unit if it was understood that his efforts would be only directed towards a defense of the United States against invasion. Since that time in numerous lengthy letters to the Army petitioner expressed his total objection to participation in war.

Reading the May 26, 1969 letter in a light unfavorable to petitioner, it seems to be a request for non-combatant status.

Reading the letter in a light consistent with petitioner's further correspondence, it shows a statement against war, from which he later developed to a position of objecting to participation in the Army in any manner whatsoever. This is consistent with the crystallization of petitioner's beliefs evidenced by the bulk of written material from the petitioner to the Army.

Interpreting the letter in either way, there is still no basis for determining that petitioner was "bargaining" with the Army. Indeed, the record taken as a

whole reflects petitioner's revulsion to killing and his belief that the armed forces, by its very nature, is a destructive, aggressive force.

The Board may have relied on the report of the psychiatrist to substantiate its finding of insincerity. The psychiatrist stated that "in view of his strong feeling of hostility * * * he does not appear to be a sincere conscientious objector." The Board had this report in front of them but does not refer specifically to it. The reason given by the psychiatrist makes little sense, but more important, the regulations do not provide for the psychiatrist determining one's sincerity. The psychiatrist is limited to the determination of the "presence or absence of any psychotic disorder." See e. g., Silverberg v. Willis, 306 F.Supp. 1013, 1022 (D.Mass.1969).

The chaplain who interviewed petitioner is the person most properly vested with the authority to determine one's sincerity. The chaplain herein stated that petitioner was religious and that he was "sincere in his belief in nonviolent action, including war."[1]

The final basis for the Board's decision is the report of the hearing officer. The hearing officer in a long report found that petitioner was not opposed to war in any form and that his beliefs were based on a personal philosophy. Both of these conclusions are rebutted by petitioner's prima facie claim. However, the hearing officer relies for his conclusion on alleged answers petitioner gave to his questions during the interview. Petitioner vigorously denies the allegations in the hearing officer's report. The court does not have the benefit of a report of what actually transpired since no reporting of these interviews are made.

The court finds that in this case it cannot give more credence to one story over the other. However, the court does note that one of the primary allegations of the hearing officer, even if true, is no ground for denying petitioner's claim. The hearing officer states that petitioner said he would fight to repel invaders. The question of whether one can be a conscientious objector and be committed to fighting an invasion has been dealt with in other cases. In United States v. Owen, 415 F.2d 383, 390 (8th Cir. 1969), the defendant stated that it was possible that he would fight if his country was invaded. The court held that this established no basis in fact as it "clearly relates to a contingency and provides no inference as to Owen's state of mind when the incident occurred. * * *"

The Ninth Circuit in United States v. Haughton, 413 F.2d 736, 742 (9th Cir. 1969), stated that a man was a conscientious objector even though he believed in the use of force "to protect the community." See also United States v. Purvis, 403 F.2d 555, 563 (2d Cir. 1968).

■ Given the above, it is clear that the Review Board used numerous incorrect standards. Furthermore, it is impossible to determine whether one or more of their improper reasons unduly influenced their general findings. The petitioner has stated a prima facie case for discharge as a conscientious objector and the court finds that there was no basis in fact for denial of such claim.

It is ordered that James Andrew Miller's petition for writ of habeas corpus be granted, and that, being illegally restrained of his liberty, he be discharged from the custody of the United States Army and custody of respondents.

---

1. A recent memorandum issued at Fort Ord, California, emphasizes the importance of the finding of sincerity. The memorandum points out that "very few recommendations for disapproval can legitimately be based upon the ground 'merely personal moral code.'" It then goes on to state the following: "[O]f course, the applicant must *sincerely* hold conscientious beliefs." Memo on Conscientious Objector Applications—Processing, Nov. 26, 1969, effective until Nov. 30, 1970, R. F. Malone, Captain AGC. Hopefully, such a memo will be used in good faith and will not suggest to hearing officers and base commanders the use of the "insincerity" standard as a means of denying valid claims for conscientious objector discharge.