William David HOLLINGSWORTH,
Petitioner-Appellant,

v.

Lieutenant Commander R. E. BALCOM,
Captain F. M. Symons, John H. Chafee,
Secretary of the Navy, Melvin Laird,
Secretary of Defense, Respondents-Appellees.

No. 20650.

United States Court of Appeals,
Sixth Circuit.

April 14, 1971.

Thomas F. Waldron, Cincinnati, Ohio, for petitioner-appellant.

Byron E. Trapp, Asst. U. S. Atty., Cincinnati, Ohio, for respondents-appellees; William W. Milligan, U. S. Atty., Norbert A. Nadel, First Asst. U. S. Atty., Cincinnati, Ohio, on brief.

Before PHILLIPS, Chief Judge, and WEICK and MILLER, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

This appeal arises from the denial of a writ of habeas corpus sought after appellant's application for discharge from the United States Navy Reserve as a conscientious objector was rejected by the Navy. Appellee Balcom is the commanding officer of the Naval and Marine Corps Reserve Training Center in Cincinnati, Ohio, to which appellant is attached. Appellee Symons is the commanding officer of the Naval Training Center at Great Lakes, Illinois, to which appellant has been ordered for active duty. Appellant filed his applica-

tion in December, 1969, at which time he was under orders to report for active duty. The administrative procedures were completed by June 24, 1970, when appellant was advised that his application for discharge had been denied. A petition for a writ of habeas corpus was filed in the court below on July 1, 1970, alleging three basic grounds for relief: (1) that the Navy violated its own regulations, thus denying appellant due process of law; (2) that incorrect legal standards were applied in reviewing appellant's application; and (3) that there was no basis in fact for the denial of the discharge. After a hearing, the District Court denied the writ on July 21, 1970, and this appeal followed.

## I.

Appellant enlisted in the naval reserves in 1965 under a contract obligating him to two years of active duty and four years in the reserves. Due to college deferments and one medical delay he had not begun to serve his active duty as of December, 1969. In April, 1969, he requested and received a transfer of his reserve station to Cincinnati, Ohio. His service record reflects that he missed several drills in Cincinnati, and after he failed to respond to two letters advising him of his unsatisfactory performance, he was ordered on December 1, 1969, to report for active duty as of December 22, 1969. On that date he appeared at the office of his commanding officer, Lieutenant Commander Balcom, and reported his intention to seek a discharge as a conscientious objector. He was then advised of the pertinent regulations governing in-service discharges and the procedures he would have to follow.[1]

The appellant returned the completed application along with supporting affidavits on December 19, 1969. He was later interviewed by two Air Force psychiatrists and by a chaplain in accordance with the regulations, and on February 20, 1970, by his commanding officer as an officer of grade O-3 or higher. Lieutenant Commander Balcom forwarded the application to the Fourth Naval District with the recommendation of a discharge for the "convenience of the Government." The commandant of the Fourth Naval District reviewed the file and forwarded it to the Chief of Naval Personnel, advising against the discharge with the comment, "the petition lacks substantiation from the recognized religious community to support his conscientious objector claims. Therefore it is considered that [appellant] is attempting to avoid fulfillment of his obligated service." The Chief of Naval Personnel submitted the application to a conscientious director review board which recommended that the discharge be denied on the ground that the application and the reports raised a doubt that he was motivated by sincerely held religious convictions. The Chief of Naval Personnel notified appellant of the finding of the review board and advised him that his application was disapproved.

The District Court found that naval regulations had been followed in all but one respect as to which appellant had waived his objections; that correct standards were applied to appellant's application; and that there was a basis in fact for the denial of the discharge. Appellant challenges all three findings.

The substance of the basis in fact test was recently reviewed in a similar case by a panel of this Court, see Bohnert v. Faulkner, 438 F.2d 747 (6th Cir. 1971). While the record in this case may cast doubt on the finding below of a basis in fact, our disposition of the appeal makes it unnecessary to

---

1. The procedures governing in-service conscientious objection are set out in Department of Defense Directive 1300.6 (May 10, 1968) (hereinafter cited as DoD 1300.6). The implementing regulation of the Navy is entitled Bupers Instruction 1900.5. The Defense Directive and the procedures thereunder were discussed by this court in an analogous case arising from the Army Reserves in Bohnert v. Faulkner, 438 F.2d 747 (6th Cir. 1971).

reach that question here. Rather, we turn to a review of appellant's argument that he was denied due process of law in that the Navy violated its own regulations in handling his appeal.

█ The regulations provide that an applicant be afforded a personal interview, with counsel retained by him if he so chooses, before an officer of grade O–3 or higher "knowledgeable in policies and procedures relating to conscientious objector matters." DoD 1300.6 ¶ VIB4. Appellant asserts that the right to appear with counsel and the right to an officer knowledgeable in conscientious objector matters were denied to him in this case. Such denial, he asserts, constitutes a denial of due process of law.

## II.

Initially we note that while courts are reluctant to review discretionary actions of military agencies, we have held that such reluctance is not meant to imply that actions of military authorities taken in violation of their own rules and regulations are not subject to judicial review. Schatten v. United States, 419 F.2d 187 (6th Cir. 1969). Courts have regularly insisted that when an administrative agency, including a branch of the armed services, has established rules and regulations for its own internal procedures, these rules and regulations cannot then be ignored by them even in the exercise of discretionary authority. *See* Smith v. Resor, 406 F.2d 141, 145 (2d Cir. 1969); Schatten v. United States, *supra,* 419 F. 2d at 191; Hammond v. Lenfest, 398 F.2d 705, 710 (2d Cir. 1968).

The doctrine that an administrative agency must adhere to its own rules and regulations was announced by the Supreme Court in United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). In that case, the failure of the Board of Immigration and the Department of Justice to abide by their own regulations in a deportation proceeding, was held to be a denial of due process of law and resulted in the vacation of a deportation order. In a more recent case, the Supreme Court followed *Accardi* in reversing a conviction for contempt of Congress on the ground that the defendant, who had been subpoenaed by the House Un-American Activities Committee, was improperly denied the right to appear at an executive session of the Committee. Yellin v. United States, 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1963). In *Yellin,* the defendant had been denied a request to appear at an executive session in accordance with HUAC rules by a staff director who had no authority to deny the request. Defendant refused to answer questions at a public hearing and was subsequently convicted of contempt of Congress. The Supreme Court noted that this was a case of an agency failing to exercise its authority according to the self-established rules which a party called before it had a right to have considered. The witness, it was said, "should at least have the chance given him by the regulations." 374 U.S. at 121, 83 S.Ct. at 1836.

This principle has been applied in cases involving conscientious objectors arising from both the Selective Service System and the armed forces by way of in-service discharges. *See* Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955); Simmons v. United States, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453 (1955); United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417 (1953); United States v. Cabbage, 430 F.2d 1037 (6th Cir. 1970); Schatten v. United States, 419 F.2d 187 (6th Cir. 1969); United States ex rel. Brooks v. Clifford, 409 F.2d 700 (4th Cir. 1969); Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968). Although these cases deal with different aspects of the Selective Service and Defense Department procedures, they may all be cited for the proposition that administrative rules and regulations must be followed in order to comply with the requirement of basic fairness implicit in the concept of due process of law. *Cf.* Simmons v. United States, 348 U.S. 397,

405, 75 S.Ct. 397, 812 (1955). As was said recently in a different context:

> These cases are consistent with the [*Accardi*] doctrine's purpose to prevent the arbitrariness which is inherently characteristic of an agency's violation of its own procedures. As the Second Circuit said in Hammond v. Lenfest [398 F.2d 705], cited with approval in United States ex rel. Brooks v. Clifford [409 F.2d 700] departures from an agency's procedures "cannot be reconciled with the fundamental principle that ours is a government of laws, not men." United States v. Heffner, 420 F.2d 809, 812 (4th Cir. 1969).

### III.

We turn to a consideration of the evidence before the District Court concerning the O–3 interview. According to Lieutenant Commander Balcom, he conducted an interview with appellant on December 1, 1969, at which time he went over the requirements of the conscientious objector application by reading with the appellant, in the presence of an enlisted man, the relevant regulations and explaining the requirements to him. This testimony is not in contention. The disputed O–3 interview occurred on February 20, 1970. Appellant testified that he was called by telephone and told that the captain wanted to see him, but that he was not notified that this was to be the O–3 hearing or that he could bring his attorney to this session. He testified that the only discussion of the conscientious objector application that occurred was an explanation of the necessary waiver of veteran's benefits entailed by discharge. He stated that the interview lasted only ten minutes and that at no time was he informed that this was the O–3 interview.

Lieutenant Commander Balcom's testimony about the February 20 meeting varies considerably from that of the appellant. He stated that at the outset he informed the appellant that as an O–3 grade officer or above he had the responsibility of conducting an interview concerning appellant's application for discharge and of forwarding the "results" to the Chief of Naval Personnel. According to Lieutenant Commander Balcom, they then went over appellant's service record and the documents pertinent to the application, including the psychiatric evaluation and the chaplain's report. He stated that at no time did appellant insist that the interview stop until his attorney could be called.

On cross-examination of Lieutenant Commander Balcom it was developed that there was no written evidence that this interview was conducted in connection with the conscientious objector application other than the executed waiver of veteran's benefits. No time records or stenographic notes were made. It was also shown that a written memorandum was kept of the telephonic notification to appellant of his June 23, 1970, interview, including recording of the fact that he was advised in answer to his question, that counsel would not be necessary for that interview. No similar memorandum of the second summons to Lieutenant Commander Balcom's office for the February 20, 1970, interview was kept.

The District Court chose to believe Lieutenant Commander Balcom's version of the interview, for in its opinion it is stated that Lieutenant Commander Balcom "informed the petitioner of the purpose of the interview, explaining that he was required, since he was an 'O–3' or above, to conduct an interview with him and forward the results of the [sic] Bureau of Navy Personnel via the Fourth Naval District Commander." He found that while appellant may not have been informed when summoned that the O–3 interview was to take place, there could be no doubt that appellant knew, once the interview commenced, that the required O–3 interview was being conducted. Thus the District Court ruled that by allowing the interview to proceed as he did without stopping it or demanding that his attor-

ney be called, appellant waived his right to have counsel present at the O–3 hearing. He further held that the commander did not violate Navy regulations or due process of law in so proceeding with the interview.

Appellant contended below and asserts on appeal that the failure to notify him that he was being called for his O–3 interview or to so inform him at the outset of the interview constituted a denial of due process of law. Even accepting Lieutenant Commander Balcom's testimony as true,[2] he asserts that it was a denial of due process of law to proceed with the interview under the circumstances as he related them.

## IV.

In view of the holding by the District Court that appellant waived his right to have counsel present at the O–3 interview, it is instructive to observe the disposition in the *Yellin* case of a similar argument by the Government. There, it was argued that the defendant had forfeited his right to appear in executive session by his failure to state explicitly to the Committee that his refusal to testify was based on the improper denial of this right. The Supreme Court rejected this argument. It was found that at the time of the hearing the defendant did not know that the Committee was acting in violation of its own rule. The defense of improper action would have been available to defendant at his trial had he asserted it correctly at the hearing and then refused to answer questions. The same

defense, it was held, should therefore be available when defendant first learned of the violation of Committee rules at his trial. "To foreclose a defense based upon those rules, simply because the witness was deceived by the Committee's appearance of regularity, is not fair." Yellin v. United States, 374 U.S. 109, at 123, 83 S.Ct. at 1837.

We think much the same situation is before us. Appellant explained his failure to object to the continuation of the interview without counsel by testifying that he first realized he did not have a proper O–3 interview when Lieutenant Commander Balcom stated that he was going to send the file to the Chief of Naval Personnel. He stated that he was under the impression that the right to counsel was a provision of the regulations which the authorities might be free to omit.

This testimony does not conflict with the finding of the District Court that appellant could not avoid the conclusion that he was having the O–3 interview. We do not think, however, that the circumstances constituted a waiver of his right to have counsel present. In December appellant had been carefully apprised of the regulation allowing him to bring counsel to the O–3 interview. Yet it was found below that in February appellant was not informed that it was the O–3 interview to which he was being summoned. He appeared without counsel, yet Lieutenant Commander Balcom testified that he ascertained that appellant had consulted counsel. Appellant testified that he was uncertain at the time whether he would bring counsel

2. Appellant, of course, still denies that the interview transpired as related by Lieutenant Commander Balcom and asserts that since no stenographic transcription was made of the interview, it was error by the District Judge to accept one version of the occasion over another. He cites as authority for this proposition Miller v. Laird, 318 F.Supp. 1401, (N.D.Calif. 1970), a similar case in which, it is argued, the District Court declined to credit one story over another since no report of the O–3 interview was made. We do not read *Miller* to support the proposi-

tion that appellant urges, and, if it does, we decline to follow it. When evidence conflicts, the court, as the trier of the fact, has the responsibility of reconciling the conflicts and making a finding. The findings of the District Court in the instant case are not arbitrary or capricious and, as supported by competent evidence, are not clearly erroneous. Were we to accept appellant's theory, the District Court would be equally constrained to accept appellant's version of the interview, and no decision could be reached.

with him.[3] He was effectively denied the opportunity to make that decision when he was summoned without being informed that the O-3 interview would be held. Yet when he was called in June, 1970, to see the commander, he was told that counsel would not be required. Having ascertained that appellant had consulted counsel, Lieutenant Commander Balcom's continuation of the interview without also ascertaining whether appellant had been informed of the reason for the interview when called, or whether he understood its purpose and intended to be interviewed without counsel, was a violation of the regulation denying appellant due process of law.

Accepting as we must the finding of the District Court that appellant must have realized at some point that the O-3 interview was being held, we think that the lack of prior notice and the "appearance of regularity," *Yellin, supra,* dissuaded him from objecting. We cannot agree that his failure to stop the interview amounted to a waiver of his right. It would be unrealistic and, we think, unfair to require that an enlisted man, applying for a discharge, must demand that an interview with his commanding officer, necessary for that discharge, come to a halt so that he could consult counsel. Once appellant appeared without counsel, unless the officer determined that appellant intended to have the O-3 interview without his attorney, it does violence to our view of the procedural fairness required of administrative agencies in following their own regulations to hold that appellant in this case validly waived his right to have counsel present.

### V.

We may deal briefly with the second complaint about the procedures followed. At the hearing in the District Court Lieutenant Commander Balcom testified that the standards that he employed in reviewing applications for conscientious objector discharges were those he learned when working for the Chief of Naval Personnel from 1949 to 1951. He stated that the standards were based on "true religious beliefs * * * such as Jehovah's witnesses, perhaps Mennonites, perhaps Mormons and a little less likely the Seventh Day Adventists * * *." He professed no familiarity with any development in the law since his days with the Chief of Naval Personnel. More significantly, he stated that he was unaware that recent changes, particularly those based upon United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), were promulgated for the Navy as a result of such recent decisions. Yet DoD 1300.6 incorporates in its criteria the language of section 6(j) of the Selective Service Act, as amended in 1967, 50 U.S.C. App. § 456(j) and more recent standards, with the note, "The law does not require affiliation with any particular religious group for classification as a conscientious objector." DoD 1300.6 ¶ V.B. *See* Bohnert v. Faulkner, 438 F.2d 747 (6th Cir. 1971). We think from this testimony that it is clear that Lieutenant Commander Balcom cannot be considered knowledgeable with respect to the applicable standards and procedures as required of the officer conducting an O-3 interview. While Lieutenant Commander Balcom reported that appellant seemed sincere in his claim as a conscientious objector, it appears that the lack of familiarity with recent developments as incorporated in the regulations which he professed to follow, particularly his use of religious standards no longer applicable, denied appellant the fair interview before an objective judge which the regulations require. *See* United States ex rel. Donham v. Resor, 436 F.2d 751 (2d Cir. 1971). We cannot speculate as to what

---

3. The District Court expressed no doubt that appellant would have brought his attorney along had he been given advance notice of the purpose of the interview. This view, we think, significantly weakens the finding of a waiver of the right to have counsel present in the somewhat unclear circumstances of the O-3 proceeding.

might have been the outcome of this case had proper procedures been followed.

Reversed and remanded with instructions that judgment be entered by the District Court remanding the action to the appropriate administrative authorities to the end that appellant's conscientious objector application may be re-opened for consideration in accordance with the applicable Defense Department regulation and the principles enunciated herein.

Reversed and remanded with instructions.