Thomas E. RYAN

v.

Lt. Col. Lee V. BARKLEY
Martd, Martc,
and
Commandant Marine Corps.
Civ. No. 72–134.

United States District Court,
E. D. Pennsyslvania.
April 25, 1972.

Henry A. Stein, Philadelphia, Pa., for plaintiff.

Henry J. Horstman, Asst. U. S. Atty., Louis C. Bechtle, U. S. Atty., Philadelphia, Pa., for defendant.

HIGGINBOTHAM, District Judge.

## OPINION

Plaintiff, Thomas E. Ryan, instituted this suit on January 19, 1972, by means of a request for a preliminary injunction seeking a stay of his involuntary activation orders issued by the United States Marine Corps pursuant to which petitioner was to report to Camp Lejeune, North Carolina, on February 26, 1972. On February 4, 1972, the Government filed a motion to dismiss. Later on February 23, 1972, counsel for Ryan and the United States entered into a stipulation, approved by this Court, restraining the Marine Corps from enforcing or reissuing active duty orders as to Mr. Ryan during these proceedings.

In his complaint, plaintiff alleges jurisdiction under 28 U.S.C. §§ 1331 and 1361. For the reasons appearing hereinafter, I will treat this as a mandamus action under 28 U.S.C. § 1361 and remand this matter to the jurisdiction of the United States Marine Corps for processing not inconsistent with this opinion.

Thomas E. Ryan enlisted in the United States Marine Corps Reserve on May 5, 1966 and was due to be discharged in May of 1972 when he would have completed his six year obligation. Ryan is currently a member of the Marine Air Reserve Training Unit (MARTU) at the Philadelphia Naval Base. By the terms of his original enlistment contract, Ryan agreed to attend weekend drills once a month and a two week annual active duty tour.

A complete review of Mr. Ryan's service record submitted by the Government reveals that prior to February 21, 1971, Mr. Ryan received three non-judicial punishments for minor infractions of Marine regulations. In addition, plaintiff asserts, and the Government does not deny, that Private Ryan was given an award "for honest and faithful service" by his Commanding Officer, Lt. Col. Lee Barkley, prior to February of 1971.

On February 21, 1971, the date of a regularly scheduled reserve meeting, Ryan was awarded another non-judicial punishment for failing to obey a lawful order. The Marine Corps Order P1001R.43, para. 2100(1.) a.(6) states current Marine Corps policy that a reservist who is "awarded a non-judicial punishment during a regularly scheduled drill" is deemed an "unsatisfactory participant" and is subject to involuntary activation until "his total service on active duty . . . equals twenty-four months." [P1001R.43, para. 2102(2.)a.] This regulation further provides that a reservist who is "unsatisfactory," as defined, must be "recommended" by his commanding officer for assignment to active duty. In addition, the regulations (para. 2102(2.) b.) provide that the "recommendation" forwarded to the Commandant by a commanding officer will include, at least, *inter alia:*

"(1) A complete resume of the circumstances which prompted the recommendation for assignment to active duty . . .

(2) Statement of the individual".

Finally, to implement para. 2102(2.) b., Lt. Col. Barkley, who was Mr. Ryan's commanding officer, issued MARTU O 1571R.2F(5) (h) which provides in part:

"Each individual declared an unsatisfactory participant shall be *informed in writing* and mandatory participants *afforded an opportunity to attach a statement* to the Commanding Officer's letter to the Commandant of the Marine Corps, if submitted within a reasonably specified date". (Emphasis added.)

Accordingly, by reason of Ryan's non-judicial punishment awarded at the February 21, 1971 Reserve Meeting, Lt. Col. Barkley on March 5, 1971 wrote a letter to Private Ryan advising him of (1) his unsatisfactory participation at the February 21, 1971 meeting, (2) a request that will be made to have him assigned to involuntary active duty, and (3) his right to submit a statement for inclusion with the commanding officer's letter provided any statement is received by March 12, 1971. Private Ryan did, in fact, submit a statement which was made a part of his record. On March 21, 1971, Barkley forwarded his recommendation along with Ryan's letter to the Marine Commandant. Following the March 17, 1971 recommendation, the Marine Corps apparently took no action as no active duty orders were then issued for Private Ryan.

On September 17, 1971, Lt. Col. Barkley again wrote to the Marine Commandant and *"recommended* that Private Ryan be assigned to active duty" (emphasis added) because of "unsatisfactory participation" at the meetings of May 1, 1971 and September 11, 1971. It is important that following the September 17, 1971 recommendation, Private Ryan was issued active duty orders on November 6, 1971 to report on November 19, 1971.[1] Thus, although Private Ryan was "recommended" for active duty a second time, he never received a second letter as he had on March 5, 1971 and as re-

1. This report date was subsequently extended to February 26, 1972 because of the illness of Mr. Ryan's mother.

quired by MARTU O 1571R.2F(5) (h) informing him of his right to submit a statement which would accompany the Commanding Officer's "recommendation". Thus, the commanding officer failed to follow the Marine Orders then in effect by his failure to inform Private Ryan of his second *"recommendation"* on September 17, 1971 and failure to give Private Ryan the opportunity to rebut and respond to his Commanding Officer's second request for involuntary active duty orders.

■ It is of course crucial to Private Ryan's claim that I find that the second letter of September 17, 1971 constituted a second "recommendation". While the September 17 letter makes reference to the prior letter of March 17, 1971, it should be noted that the Marine Corps took no action to issue active duty orders for Private Ryan until after the September 17 letter. Whether the failure of the Marine Corps to take any action between March and November of 1971 relates to the persuasiveness of Private Ryan's letter of March 5, 1971 or to the added weight of Lt. Col. Barkley's second letter is not material. If Ryan's letter of March 5, 1971 was so persuasive that the Marine Corps had decided not to activate him at that time, then the September 17 letter of Barkley must surely be construed as a second "recommendation", requiring that Ryan be given an opportunity to respond pursuant to MARTU O 1571R.2F(5) (h). On the other hand, if the Marine Corps had decided to activate Ryan prior to the September 17 letter but was awaiting further evidence, then when that additional evidence in the form of a second "recommendation" was supplied, the reservist must be notified of the additional evidence and be given a second opportunity to respond in accordance with MARTU O 1571R.2F(5) (h). The failure of the Marine Corps to permit the affected reservist to respond to subsequent "recommendations" would allow abuses in a case such as the instant one where a reservist is notified that he is being activated because of his performance at one meeting and responds to that initial complaint; when in fact the activation is based on conduct at a second meeting which the reservist would have no reason to know was the basis for the activation "recommendation" and thus was not the subject of any response.

■ My finding that the September 17, 1971 letter constituted a second "recommendation" does not run afoul of the now well-established rule that courts have no power to review discretionary judgments of the military made within the military's valid jurisdiction.[2] Thus, here, I intimate no view as to whether Private Ryan's performance at the meetings of February 21, 1971, May 1, 1971 and September 11, 1971 was or was not satisfactory as defined by the Marine Corps Regulations. On the other hand, it is equally well-established and here conceded by the Government that a court does have jurisdiction to determine whether or not the military's orders "were promulgated in violation of the military's own regulations". O'Mara v. Zebrowski, 447 F.2d 1085, 1087 (3rd Cir. 1971).[3] I have found above that the September 17, 1971 letter of Lt. Col. Barkley to the Marine Corps Commandant was a "recommendation" within the meaning of Marine Corps Order P1001R.43, para. 2102(2.) (a and b). Further, Private Ryan was neither sent a notice nor given an opportunity to submit a statement with respect to the September 17, 1971 "recommendation" as specified in MARTU O 1571R.2F(5) (h). Accordingly, the active duty orders issued to Private Ryan following the September 17, 1971 letter of "recommendation" must be quashed as void, as

2. *See, e. g.,* Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953); O'Mara v. Zebrowski, 447 F.2d 1085 (3rd Cir. 1971); Byrne v. Resor, 412 F.2d 774 (3rd Cir. 1969); Fox v. Brown, 402 F.2d 837 (2nd Cir. 1968), cert. denied 394 U.S. 938, 89 S.Ct. 1219, 22 L.Ed.2d 471 (1969).

3. *See, e. g.,* Schatten v. United States, 419 F.2d 187 (6th Cir. 1969); Smith v. Resor, 406 F.2d 141 (2nd Cir. 1969).

the orders resulted from a violation of the Marine Corps' own regulations and not from the discretionary authority of Lt. Col. Barkley to declare Ryan's performance "unsatisfactory". Thus, for all the above reasons, I hereby find that the orders requiring Private Thomas E. Ryan to report for active duty are void and remand this matter to the jurisdiction of the Marine Corps. If the Marine Corps desires to activate Private Ryan, it is of course free to do so as long as the Marines comply with all applicable regulations, laws and constitutional provisions.[4]

4. This Opinion constitutes the prerequisite findings of fact and conclusions of law as required by Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.Rule 52(a).