**Bernard A. TOBICZYK, Petitioner,**

v.

**UNITED STATES of America et al.,
Respondents.**

**Civ. A. No. 39006.**

United States District Court,
E. D. Michigan, S. D.

Sept. 6, 1974.

Sheldon M. Meizlish, Detroit, Mich., for petitioner.

Jeffrey A. Heldt, Asst. U. S. Atty., Detroit, Mich., for respondents.

## MEMORANDUM OPINION

FEIKENS, District Judge.

This is a habeas corpus proceeding in which petitioner asks the court to set aside an involuntary activation order of the Department of the Army. This order activates petitioner under authority of 10 U.S.C. § 673a for unsatisfactory performance in the "ready reserve" of which he is a member. Specifically, the Army claims that Tobiczyk consistently missed drills and meetings of his reserve unit. Petitioner does not deny the fact of his absences, but contends that the activation order is illegal for several reasons. First, petitioner claims that the order is improper because it was issued by an unauthorized officer. Second, he claims that the due process clause of the fifth amendment entitles him to a full hearing before he can be activated. Finally, he argues that due process was violated when the Army failed to follow its own regulations requiring certain medical examinations. Though much is made of his physical condition, it is important to note that the court is not asked to review the military's factual determination of petitioner's fitness.

Two of petitioner's contentions can be dealt with at the outset. It is well settled that though there are punitive aspects to involuntary activation, a full due process hearing is not required. Antonuk v. United States, 445 F.2d 592 (6th Cir. 1971) and cases cited therein. This court is bound by that line of precedent and declines petitioner's strained invitation to avoid their impact. Nor can the court accept the argument that the Secretary of the Army is not authorized to order involuntary activations. No case has been cited to support petitioner's position, and analogy to the exclusionary rule of evidence is not appropriate. Resolution of the remaining issue is more complicated, however, and will require a close examination of the facts surrounding this controversy.

Bernard Tobiczyk enlisted in the Army Reserve in 1968. Even before his enlistment, he apparently had orthopedic problems with his knee. These were severe enough to require leaves of absence from his civilian job, and have prompted

him to consult army doctors on various occasions during his military career. At basic training he was given a period of physical therapy, and was placed on light duty restriction. After training, and prior to 1971, he complained about knee problems to his reserve unit officer at weekend drills. On several occasions he was referred to an army doctor and sent home for the remainder of the drill. It is not possible to tell the extent of these examinations since the Army routinely destroys the records of all but the most recent medical evaluation. Though petitioner was sent home on these occasions, no permanent light duty restriction was imposed, nor was any change made in his assignment as truck driver.[1]

In 1971 petitioner attended summer camp with his unit where he was also a truck driver. He complained of pain and was referred to an army doctor who prescribed light duty. (The records of this visit have also been destroyed.) Nevertheless, petitioner was put on "K.P." which included carrying heavy loads, stooping and scrubbing floors. This work aggravated his knee, so he complained to the mess sergeant who referred him to one Sergeant Williams. When this complaint was not acted on he approached his acting commanding officer, Lieutenant Henry, who told him to go back to "K.P."

About this time petitioner filled out a form, DD 220, in which he stated that he did not believe himself medically qualified to perform military service. As to this Army Regulation 140–120 10 c (2)(b) 2 provides:

"As a part of the processing for relief from active duty for training, reservists will complete in duplicate Medical Statement No. 2 on DD Form 220 . . . . Reservists who have been injured or have been hospitalized for illness during their tour, or, if they request it, *will be given a medical examination* of the scope prescribed for relief from active duty in chapter 10, AR 40–501. Special consideration will be given to recording details of the condition which required the examination." (Emphasis added.)

However, no examination was given. Following summer camp petitioner attended either one or two weekends of drill, continuing in his duties as truck driver. He then stopped attending, though for a time he turned in medical excuses based on his knee problem.

In June, 1972 petitioner's commanding officer, Colonel Boyle, recommended the involuntary activation and petitioner filed an intra-army appeal. On August 29, before any action was taken on the appeal, petitioner received the challenged order. On October 5, 1972, after the order and in connection with the involuntary activation, petitioner was seen by an army physician and given a complete physical. Most of the report of this examination was supplied to the court by defendant in illegible form, but the recommendation section does reveal that the doctor recommended back care with minimal stooping or lifting. The reports concludes, however, that petitioner is fit for active duty.

Faced with activation, not having been afforded his appeal, and in doubt about his physical condition, Tobiczyk filed this petition for habeas corpus. At that time, Chief Judge Kaess of this court stayed the activation order pending resolution of the suit. Several delays then occurred. First, the Army acknowledged that the appeal had not been properly processed, and further court action was stayed pending resolution of the appeal. The Appeal Board affirmed the activation order, and the parties returned to court. The trial was held and testimony received, but before a decision was made by the court the parties stipu-

---

1. Petitioner's job of truck driver involved maintenance, loading and unloading as well as the actual driving. In this connection a good deal of heavy lifting, stooping and standing at attention for long periods of time was necessary. Trial Transcript at 64–66.

lated to remanding the case to the Army for another physical and reconsideration.

In a somewhat confusing series of events, the Army again examined petitioner on April 24, 1974. This report is in some portions also illegible, but it is clear that the examining doctor found petitioner *unfit* for active duty. On reviewing the record, the Surgeon General of the Army determined that the examining doctor had used the wrong standard in making his evaluation. Then, without seeing petitioner, he decided that Tobiczyk would be fit under the correct standard so long as duty restrictions were imposed. These include no crawling, stooping, running, jumping, marching or standing in excess of thirty minutes. In this posture the parties returned to the court for a decision on petitioner's claims.

In arguing that the government failed to follow its regulations, petitioner relies on the theory of Antonuk v. United States, 445 F.2d 592 (6th Cir. 1971):

". . . violation by the military of its own regulations constitutes a violation of an individual's right to due process of law . . . . Accordingly, the due process clause here requires us not to measure the Army regulations against some constitutional standard, but instead to determine whether the regulations were followed." 445 F.2d at 595.

*See also* Schatten v. United States, 419 F.2d 187 (6th Cir. 1969) in which the court held:

"Although it is not this Court's function to 'direct the exercise of judgment or discretion in a particular way,' Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 218, 50 S.Ct. 320, 324 [74 S.Ct. 809] (1930), it is not inappropriate that this Court require the proper authorities to temper the exercise of their discretion with the laws of the United States and their own regulations." 419 F.2d at 192.

In this case it is undisputed that the Army failed to give the medical examination required by the submission of form DD 220. Defendant argues, however, that it substantially complied with the requirements of AR 140–120 in that army doctors examined petitioner on several occasions. While the record reveals this to be true as far as it goes, defendant has not been able to show that any of these examinations were of "the scope prescribed for relief from active duty in chapter 10, AR 40–501". Even more distressing, it appears that when one of these examinations resulted in the doctor giving petitioner light duty orders, these orders were ignored by the three superior officers from whom he sought relief.

Defendant seeks to characterize petitioner as a chronic complainer. It is clear that the reason for his chronic complaints was the inability of the military to respond to his legitimate grievance. Caught in this position of being ordered to do work which he claims was both painful and potentially harmful to his orthopedic condition,[2] petitioner did exactly what he should have under army procedure, he filled out the DD 220 form. The court cannot accept defendant's contention that because of the way it did respond to petitioner's medical problem it ought to be excused from further compliance with its own regulations.

■ Nor can it be said, as defendant argues, that the Army's failure to give the required exam was without prejudice to petitioner. The reports of each doctor who saw him, both military and civilian, indicate that if Tobiczyk were to be kept in the Army he would require duty restrictions including the elimination of bending, stooping and lifting. Had he been given the examination at the correct time, and had the government followed the directive of its doctor, it is reasonable to assume that he would not have been returned to his

2. Deposition of J. G. Reid, M.D., at 17–18.

job as truck driver. This failure to examine petitioner is prejudicial to his due process rights. AR 135–91 mandates that before a unit commander recommends the involuntary activation of a member for reason of absence from drills, he must determine "if any cogent or emergency reason existed which prevented the member from attending". Defendant was unable to show that this determination was made; but even if it had been, it would be meaningless if the officer did not have all the relevant information before him. McSweeney v. United States, 338 F.Supp. 350 (N.D. Ohio 1971). A comprehensive medical report detailing petitioner's disability is certainly relevant, and could have easily affected Colonel Boyle's original determination.

The importance of following regulations by the military in cases where due process rights are involved cannot be overemphasized. In *Antonuk* the United States Court of Appeals for the Sixth Circuit made it clear that while the overwhelming importance of national defense made a full due process hearing unnecessary, the Army was not free to disregard its own due process requirements. It is true that the scope of judicial review available to scrutinize military decisions under the "basis in fact test" is one of the narrowest known to the law. Bohnert v. Faulkner, 438 F.2d 747 (6th Cir. 1971). But as the number of due process remedies of an army reservist diminish, those remaining gain in importance. If the Army is to be excused from following its own regulations, the petitioner is left with no due process rights whatever. A person in the position of Tobiczyk had but three available sources of relief: his DD 220 form to seek medical review of his fitness for service; the determination by his commanding officer as to whether his absences were excused by "cogent" reason; and his intra-army appeal. In this case the defendant in some way prejudiced petitioner at each of these stages. That the Army conducted a complete physical as part of his activation procedure, and eventually got

around to determining the appeal do not have a nunc pro tunc remedial effect.

"Consideration . . . after the fact of activation cannot rehabilitate the inappropriateness of the proceeding in the first instance." *McSweeney, supra,* 338 F.Supp. at 354.

In granting this petition for habeas corpus, a word is necessary about the relief actually given. This court is only declaring that petitioner's involuntary activation was illegal, and is not releasing him from his obligations to perform in the Army Reserve under the appropriate duty limitations. Defendant has argued strenuously that petitioner should not be excused from his obligations just because the Army has erred. The court agrees, but insists that neither should he be prejudiced by the Army's failure to follow its own procedure. In returning this situation to the status quo, it is the court's intent that both parties will now be able to perform their responsibilities diligently.

Accordingly,

The petition for habeas corpus is granted in accordance with these qualifications.

An appropriate order may be submitted.