**Timothy W. CROWLEY, Plaintiff,**

v.

**UNITED STATES of America et al.,
Defendants.**

**Civ. A. No. 72–C–398.**

United States District Court,
E. D. Wisconsin.

Feb. 19, 1975.

Frank L. Nikolay, Colby, Wis., for plaintiff.

David J. Cannon, U.S. Atty. by D. Jeffrey Hirschberg, Asst. U.S. Atty., Milwaukee, Wis., for defendants.

## DECISION AND ORDER

REYNOLDS, Chief Judge:

This is an action for injunctive relief in which an Army reservist seeks to restrain the Army from ordering him to active duty and require it to grant him a discharge. The Government has filed a motion to dismiss the complaint pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, a motion for summary judgment under Rule 56. Plaintiff has also filed a motion for summary judgment under Rule 56. All parties have supported their motions by affidavits and briefs. For the reasons hereinafter indicated, the Government's

motions are denied, and the plaintiff's motion is granted.

## FACTS

On December 14, 1966, the plaintiff, then a dental student, filled out an application for his appointment in the Army Medical Service Early Commissioning Program. The relevant portions of that application are as follows:

"1. Under the provisions of AR 601–140, which I have read and understand, I hereby volunteer for participation in the Army Medical Service Early Commissioning Program and I agree * * * that I will

"a. Faithfully pursue toward completion an established course of study leading to a degree in Dentistry.

"b. Accept appointment as a Reserve commissioned officer of the Army * * *.

"c. Accept reappointment in the Dental Corps *upon graduation*, if tendered.

"2. I understand and agree—

\* \* \* \* \* \*

"c. That the fact that I may be reappointed in the Medical, Dental, or Veterinary Corps of the Reserve of the Army *upon graduation* does not bind the United States Army to order me to extended active duty. I understand that my entrance on active duty *will be contingent upon Army requirements at the time I am determined to be qualified for active duty*, and that *I hereby volunteer for entry on active duty when and if my services are required*. If I am excess to the needs of the Active Army, I will be permitted to fulfill the remaining portion of my military obligation in the Ready Reserve. * * * " (Emphasis added.)

The form has plaintiff's signature at the end. It also contains a statement signed by the Registrar of Marquette University School of Dentistry to the effect that plaintiff was enrolled there and would graduate "on or about June, 1970."

On January 10, 1967, plaintiff signed NGB Form 62, applying for federal recognition as a Second Lieutenant, Medical Service Corps, in the Army National Guard of Wisconsin, and for appointment as a reserve officer of the Army in the Army National Guard of the United States. In the "remarks" section of this form is typed: "To be reappointed 1LT, DC, upon graduation from Dental School."

On January 23, 1967, plaintiff was appointed and commissioned in the Wisconsin Army National Guard. Federal recognition was extended on March 10, 1967, with an effective date of January 23, 1967. Orders appointing plaintiff a reserve commissioned officer of the Army were published on April 4, 1967, with the appointment effective as of January 23, 1967.

On August 12, 1968, plaintiff was released from his assignment with the Wisconsin National Guard since he had resigned to accept an appointment in the U.S. Army Reserve. On August 20, 1968, the effective date of the change of strength accountability was changed to August 1, 1968. On November 18, 1968, orders were published which assigned plaintiff to the 312th Medical Detachment in Milwaukee, Wisconsin, with an effective date of August 13, 1968.

On May 24, 1970, the plaintiff graduated from dental school.

Orders were published on August 5, 1970, transferring plaintiff from the 312th Medical Detachment to the U.S. Army Reserve Control Groups, with the effective date being June 1, 1970.

On August 20, 1970, plaintiff was appointed a First Lieutenant in the Dental Corps, U.S. Army Reserve. Plaintiff accepted this appointment on October 31, 1970.

On September 21, 1970, plaintiff wrote to Captain Lemieux at the U.S. Army Reserve Components Personnel Center in an attempt to clarify what his status was. In the letter he referred to a telephone conversation he had had with Captain Lemieux about a month before. On

October 5, 1970, the Army sent a form to the plaintiff acknowledging receipt of his letter of September 21 and promising that "reply could be expected in 30–45 days." Apparently on the same date the Army Medical Department, Officer Management Section, headed by Captain Lemieux, sent a request for plaintiff's file to the U.S. Army Administration Center.

On November 25, 1970, plaintiff called about his status, but apparently no information was available.

Finally on April 13, 1971, Lt. Col. Douglas, the Chief of the Delayed Officer Management Division of the U.S. Army Reserve Components Personnel Center wrote a letter to plaintiff in response to his inquiries. The relevant portions of this letter read:

"2. A review of your records indicate you accepted appointment in the Medical Service Corps as a Second Lieutenant on 21 April 1967 and were delayed to pursue studies leading to a degree in Dentistry. Your application for appointment indicates you were to receive this degree in June 1970.

"3. You were transferred to the control of the USAR Control Group (Officer Active Duty Obligor) USARCPC, Fort Benjamin Harrison, Indiana 46249 under Letter Orders 08–248 dated 5 August 1970; however your file was not received until November 1970.

"4. A full review of your records indicates *you should have been scheduled to enter on active duty in the U.S. Army upon completion of your dental studies in June 1970.*

"5. Based upon the above information * * * you will be scheduled for entry on active duty after 30 June 1971. * * *" (Emphasis added.)

On May 4, 1971, plaintiff's attorney requested a review of his file. Lt. Col. Douglas replied on June 3, 1971, in a letter where he stated:

"* * * He [plaintiff] incurred an obligation to serve on active duty *upon the receipt of his degree* which he obtained in June 1970, provided his services were needed.

\* \* \* \* \* \*

"A complete review of LT Crowley's records, together with the current requirements for Dental Corps Officers on active duty, indicates he has to fulfill his contractual obligation which he incurred on 14 December 1966 in accordance with the provisions of AR 601–140.

\* \* \* \* \* \*

"* * * Action is presently being taken to promote LT Crowley to the ranks of 1 LT prior to his entry on active duty during the summer of 1971 for a period of two years. * * *" (Emphasis added.)

On June 10, 1971, plaintiff's attorney responded to Douglas' letter, saying that since plaintiff had only a little over 18 months remaining on his "total service obligation," it would be—

"* * * impossible for him to complete the two year term, which you say he will begin this summer. He will not begin, as you indicate, a period of, '. . . active duty during the summer of 1971 for a period of two years.' He has only a little more than 18 months remaining on his total service obligation. Any delays in orders to active duty were not due to any action taken by Lieutenant Crowley."

On July 12, 1971, Douglas wrote to plaintiff, stating that when plaintiff accepted appointment into the Medical Service Corps, he had—

"* * * incurred a contractual obligation to serve on active duty upon completion of your dental studies for a period of two consecutive years. This obligation was in addition to any obligation which you might have incurred as a member of the Wisconsin National Guard or other reserve unit."

Douglas' letter went on to inform plaintiff that his request for transfer to a reserve unit could not be approved, and requested plaintiff comply with the "ac-

tive duty packet" which had been sent to him.

On the same date Douglas informed plaintiff's attorney by letter that the Army was relying on a "Contractual Obligation" of plaintiff to serve on active duty "upon the attainment of his Dental Degree" for a period of two consecutive years. Douglas referred to AR 601–140 as the source of this obligation.

The Army, therefore, continued in its preparations for plaintiff's entry on active duty. On August 9, 1971, a set of DA Forms 2694, "AMEDD Officer Initial Assignment Questionnaire," was sent to the office of The Surgeon General in order to obtain a duty assignment for plaintiff.

Shortly thereafter, on August 23, 1971, plaintiff's attorney responded to Lt. Col. Douglas' letter of July 12, 1971. In the letter he asserted that the failure of the Army to nominate plaintiff for active duty by February 1 of the year of his graduation (1970), as required by AR 601–140, was a breach of plaintiff's contract with the Army. The result claimed was a release of plaintiff from any active duty obligation.

Lt. Col. Douglas responded to this in a letter of September 17, 1971, stating that the nomination procedure "refers to the administrative procedures utilized by this Center with The Surgeon General. It in no way entails direct notification to each officer by the Office of The Surgeon General." Douglas ended the letter by stating that plaintiff "remains scheduled to enter on active duty in the near future."

The reference in Douglas' letter to the "near future" was, however, a forlorn hope. Since assignment instructions were not received for plaintiff, another set of DA Forms 2294 was sent to the Surgeon General on December 17, 1971.

This time assignment instructions were received from the Surgeon General. By letter dated January 28, 1972, plaintiff was informed that he would shortly receive official orders to report for active duty on June 1, 1972, at Fort Hood, Texas. Plaintiff was also informed that he had to undergo a physical examination.

On the same date a "Memo For Record" was written. In it the writer said: "Officer actually eligible for active duty July 1970, but actual assignment instruction never furnished by OTSG. * * * "

Finally, by orders dated March 17, 1972, plaintiff was officially ordered to active duty at Fort Hood with a "reporting date" of June 1, 1972.

On April 3 or 4, 1972, plaintiff called the Delayed Officer Management Division and talked to Edward R. Schaefer, a civilian employee of the Army. There is a dispute between the parties over whether Schaefer told plaintiff that the orders of March 17, 1972, would be withdrawn until his status was clarified.

It is clear, however, that plaintiff did not report to Fort Hood on June 1, 1972, and the Army therefore considered him A.W.O.L. (absent without leave).

On July 5, 1972, one Lt. Myers of Fort Hood, Texas, called plaintiff's attorney and informed him that apprehension procedures would be put into effect.

On July 6, 1972, plaintiff filed his initial complaint along with a motion for a temporary restraining order and an affidavit of the plaintiff. In the affidavit plaintiff alleged that when he—

"did not receive a nomination for active duty prior to 1 February, 1970, the year of his graduation from Marquette University Dental School, pursuant to the requirements of Army Regulation 601–140, under which the plaintiff entered the Military Service, he incurred expenses of over Thirty Thousand Dollars in establishing a dental practice * * * for which he is presently indebted; * * * ."

On the same date a hearing was held in chambers with plaintiff, his attorney, and an Assistant U.S. Attorney present. The Court ordered:

"That the Secretary of the Army, his officers and agents be and they hereby are temporarily restrained

from any further proceedings in connection with the ordering of the plaintiff, Timothy W. Crowley, to active duty pending further order of this Court."

After several extensions of time were granted, on January 3, 1973, the defendants filed a motion to dismiss or, alternatively, for summary judgment, accompanied by a supporting brief and affidavits.

On January 29, 1973, plaintiff filed his motion for summary judgment and to dismiss the defendants' motion. It was accompanied by briefs and an affidavit.

Thereafter, on February 16, 1973, plaintiff filed an amended complaint, and on April 12, 1973, the parties stipulated to the filing of a supplemental complaint. The supplemental complaint alleged that plaintiff had submitted a written resignation to the Adjutant General's office on January 23, 1973, effective on the same date.

## JURISDICTION

In his amended complaint, plaintiff cites 28 U.S.C. § 1346(a)(2) as giving jurisdiction for this action. It is clear, however, that the Tucker Act does not provide a jurisdictional grant where the only relief requested is equitable. Richardson v. Morris, 409 U.S. 464, 93 S. Ct. 629, 34 L.Ed.2d 647 (1973); Casarino v. United States, 431 F.2d 775 (2d Cir. 1970).

Similarly, plaintiff's allegation of jurisdiction under 28 U.S.C. § 2241 must also fail. There is no habeas corpus jurisdiction where, as here, the plaintiff is not required by military orders to be in the forum district. Gonzales Salcedo v. Lauer, 430 F.2d 1282 (9th Cir. 1970); United States ex rel. Rudick v. Laird, 412 F.2d 16 (2d Cir.), cert. denied 396 U.S. 918, 90 S.Ct. 244, 24 L.Ed.2d 197 (1969).

Plaintiff has also cited 28 U.S.C. § 1361 as a grant of subject matter jurisdiction in this action. Several courts have ruled that § 1361, which grants original jurisdiction to district courts of "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff," is applicable where a member of the Armed Forces seeks to compel compliance with a military regulation, as here. Rasmussen v. Seamans, 432 F.2d 346 (10th Cir. 1970); Schatten v. United States, 419 F. 2d 187 (6th Cir. 1969); Smith v. Resor, 406 F.2d 141 (2d Cir. 1969).

The cases the defendants have cited in support of their contention that the court lacks subject matter jurisdiction are distinguishable. In Jarrett v. Resor, 426 F.2d 213 (9th Cir. 1970), the Court ruled there was no § 1361 jurisdiction because the plaintiff was not seeking to compel the Army to comply with its own regulations, unlike here. Also, in Guffanti v. Hershey, 296 F.Supp. 553 (S.D. N.Y.1969), the plaintiff was seeking a particular interpretation of a statute, rather than compliance with a clear duty.

It is apparent, therefore, that there is subject matter jurisdiction here under § 1361. Additionally, § 1331 provides a jurisdictional basis. Although plaintiff has not specifically claimed § 1331 as applicable, "[i]f facts giving the court jurisdiction are set forth in the complaint, the provision conferring jurisdiction need not be specifically pleaded." Williams v. United States, 405 F.2d 951, 954 (9th Cir. 1969). Cf., New York State Waterways Ass'n, Inc. v. Diamond, 469 F.2d 419 (2d Cir. 1972); Schwarz v. United States, 191 F.2d 618 (4th Cir. 1951); Wright, Law of Federal Courts, § 69, at 291 (2d ed. 1970).

Several cases have ruled that there is federal question jurisdiction pursuant to § 1331 where plaintiff has alleged that there is a $10,000 controversy and seeks to compel the military to follow its own regulations. Spencer v. Laird, 442 F.2d 904 (2d Cir. 1971); Brown v. Schlesinger, 365 F.Supp. 1204 (E.D.Va.1973); Garmon v. Warner, 358 F.Supp. 206 (W. D.N.C.1973); Cortright v. Resor, 325 F. Supp. 797 (E.D.N.Y.1971), reversed on other grounds, 447 F.2d 245 (2d Cir.

1971), cert. denied, 405 U.S. 965, 92 S.Ct. 1172, 31 L.Ed.2d 240 (1972).

This Court concludes, therefore, that it has subject matter jurisdiction here pursuant to both §§ 1361 and 1331.

■■■ Defendants have also argued that this action is barred by the doctrine of sovereign immunity. This doctrine is said to bar suits that will interfere with the public administration, affect the public treasury, or cause the United States to do or refrain from doing some act. Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). It seems clear, further, that neither § 1361 nor § 1331 is a waiver of the Government's immunity. McQueary v. Laird, 449 F.2d 608 (10th Cir. 1971); Beale v. Blount, 461 F.2d 1133 (5th Cir. 1972). Therefore, any claim against the United States as a party must be denied.

■■■ The plaintiff has, however, also joined as parties defendant the Secretaries of Defense and of the Army.[1] While a suit against a public official in his official capacity is treated as if it were brought directly against the government, see Hawaii v. Gordon, 373 U.S. 57, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963); Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 688–690, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949), there are exceptions to the sovereign immunity doctrine. Where an official is acting in excess of his authority, or his authority is unconstitutional or is being exercised in an unconstitutional manner, sovereign immunity is not a bar. Dugan v. Rank, supra; Larson v. Domestic & Foreign Commerce Corp., supra.

■■■ Plaintiff has alleged that the defendants are acting in contravention to Army regulations in ordering him to ac-

tive duty. If this is true, not only would it be action beyond the scope of the defendants' lawful authority, but the "failure of the Army to follow its own regulations constitutes a deprivation of due process." Konn v. Laird, 460 F.2d 1318, 1319 (7th Cir. 1972). Thus, sovereign immunity is not a bar to this action.

The defendants' motion to dismiss also alleged an absence of personal jurisdiction. The Court finds this objection to be meritless, since 28 U.S.C. § 1391(e) provides for service of process by certified mail, which was accomplished here.

In summary, this Court finds that it has both subject matter and personal jurisdiction, and that sovereign immunity is not a bar to resolving this case on the merits.

## MERITS

Plaintiff entered the Army under the provisions of the Medical Service Early Commissioning Program established by AR 601–140 (June 19, 1963). This program was begun by the Army under the authority of Department of Defense Directive 1200.14 (March 23, 1963). Paragraph III–B of DoD Directive 1200.14 (July 30, 1969)[2] reads in relevant part:

"B. *Medical Service Early Commissioning Programs*

"1. The Military Departments will maintain a Medical Service Early Commissioning Program * * *.

"2. Participants in a program will be required to enter on active duty for 24 months, with or without their consent, under the provisions of DoD Directive 1235.2 (reference (e))[3] *upon the com-*

---

1. Although Melvin R. Laird and Robert Froehlke are the named Secretaries who are defendants here, Rule 25(d)(1), Federal Rules of Civil Procedure, automatically substitutes their successors as parties.

2. The Court has not been advised by the parties of any difference between the 1963 and 1969 editions of DoD Directive 1200.14.

3. DoD Directive 1235.2 (May 24, 1958), delegates power to the service Secretaries to order to active duty for not more than 24 consecutive months any members of a "reserve component * * * who is in a * * * dental * * * specialist category, who has not attained the thirty-fifth anniversary of the date of his birth, and who has not performed at least one year of active duty (other than for train-

*pletion of their professional training* if there is a requirement for their services and they are under 35 years of age and have not performed at least one year of active duty (other than for training)"[4] (Emphasis added.)

It is obvious that the Directive looks to a program under which participants will enter on active duty at the completion of their professional education, if at all. The implementing Army regulation, AR 601–140 (June 19, 1963, with Change 1 of June 30, 1964), established a program where the participants would enter on active duty at or shortly after their professional training ended. Selected portions of AR 601–140 (1964) read:

"1. General. These regulations implement the provisions of Department of Defense Directive 1200.14 for the Army as it applies to the Medical Service Early Commissioning Program.

"2. Purpose. This program has the following primary purposes:

"a. To provide a programmed input * * *.

"b. To insure the delay from active duty of students in the specialities of medicine, dentistry, and veterinary medicine *until completion of professional educational qualification.*

"3. Appointment and participation. a. Male students selected for or enrolled in * * * dental * * * schools * * * may be appointed as Reserve commissioned officers in the grade of second lieutenant for assignment to the Medical Service Corps * * *.

\* \* \* \* \* \*

"g. Participants will, *upon graduation,* be appointed as Reserve commissioned officers in the Medical, Dental, or Veterinary Corps, as appropriate.

\* \* \* \* \* \*

"4. Responsibility.

\* \* \* \* \* \*

"b. Army area commanders.

\* \* \* \* \* \*

"(2) Commanders who tender initial appointments of participants * * * are responsible for the actions prescribed below until such time as the participants enter on active duty.

\* \* \* \* \* \*

"(c) For all participants * * *: *Insuring that participants are processed for and nominated for active duty at the conclusion of their professional educational training.*

\* \* \* \* \* \*

"5. Obligations. Participants are obligated to the conditions agreed upon by signing the application (fig. 1). *Applicants will be advised of any statutory service or training obligation that they will acquire by reason of appointment under this program* (AR 135–90).

\* \* \* \* \* \*

"7. Nominations for active duty. a. By 1 February of each year, each area commander will nominate to The Surgeon General * * * those participants * * * *who will be required to enter active duty during the following fiscal year.* * * *" (Emphasis added.)

The application form that plaintiff signed on December 14, 1966, explicitly incorporates the provisions of AR 601–140. It also looks toward active duty upon the completion of plaintiff's professional education, since plaintiff agreed to accept reappointment in the Dental Corps *"upon graduation,* if tendered." (Emphasis added.) The form also stated that the plaintiff's entry on active duty "will be contingent upon Army requirements at the time I am determined to be qualified for active duty, and that I hereby volunteer for entry on active duty when and if my services are required."

---

ing)." This was superseded by DoD Directive 1235.10 VII which retained the identical language.

4. Change I of 1200.14 (June 5, 1972) made no change in paragraph III–B except to substitute DoD Directive 1235.10 for 1235.2.

The Dean's comments on the form stated plaintiff would graduate "on or about June, 1970."

Further, in the "remarks" section of NGB Form 62, signed by plaintiff on January 10, 1967, the statement appears: "To be reappointed 1LT, DC, *upon graduation from Dental School.*" (Emphasis added.)

██ This Court's conclusion is that under the DoD Directives, the applicable Army regulations, and the forms plaintiff signed, the Army had a right to order plaintiff to active duty upon his graduation from dental school or shortly thereafter. The Army was not required to order plaintiff to active duty if it did not need his services at the time of his graduation, so plaintiff could not be assured that he would be going on active duty. But the Army did not have the right to wait a substantial amount of time after plaintiff graduated before ordering him to active duty. Plaintiff was entitled to be ordered to active duty upon his graduation or shortly thereafter, or not at all. He was not to be subjected to a lengthy period of uncertainty over whether he would have to go on active duty.

This conclusion is supported by two statements made by Lt. Col. Douglas in his correspondence. In his letter to plaintiff of April 13, 1971, he stated:

"A full review of your records indicates you should have been scheduled to enter on active duty in the U.S. Army upon completion of your dental studies in June 1970."

In a subsequent letter to plaintiff's attorney, dated June 3, 1971, Douglas reiterated the following:

" * * * He incurred an obligation to serve on active duty upon the receipt of his degree which he obtained in June 1970, provided his services were needed."

Strong policies also support the Court's conclusion here. The participants in this program have spent years acquiring the knowledge and skill to practice the arts of medicine or dentistry. In order to decide whether to establish a practice of their own or associate with others, they have to know at the conclusion of their professional training whether they will shortly have to go into the Army. It would be manifestly unfair if the Army were able to keep participants in suspense, since they would be placed in a dilemma. If they started a practice, they might subsequently be ordered to active duty, thereby destroying their practices. This might deter recent graduates from establishing a practice until the Army, in its own good time, informed them whether or not they would be ordered to active duty. This waste of valuable resources cannot be tolerated by a nation chronically short of physicians and dentists.

Additionally, if the Army were able to keep participants in a state of suspended animation after the conclusion of their education, the program would be less attractive to potential applicants. Enforcement of the Army's obligation to decide whether to order active duty for each participant at the end of their professional training will further the program's purposes.

Plaintiff graduated from dental school in May of 1970, and the Army admits he should have commenced active duty in June of 1970. But it was not until April 13, 1971, that he was told he would go on active duty. And although he was informed that his active duty would commence in June 1971 (a year after it should have), orders were not published until March 1972. Those active duty orders carried a reporting date of June 1, 1972. This was over two years after the date of plaintiff's graduation. This period of almost two years was far too long to keep plaintiff in suspense over whether he would be ordered to go on active duty. Since the orders of March 1972 were not authorized by Army regulations, they were illegal and of no force or effect.

Plaintiff's six-year statutory obligation ended on January 23, 1973. He has resigned his commission, effective on that date. AR 135–90, 2–2f, October 14,

1968, describes the service obligation of participants in the Medical Service Early Commissioning Program:[5]

"f. *Physicians, dentists, veterinarians, and medical, dental and veterinary students.*

"(1) Male officers in the above categories who are initially appointed prior to their 26th birthday fulfill their statutory service obligation by serving on active duty; participating satisfactorily in the Reserve; or a combination thereof. When active duty is performed, the combined active duty and Ready Reserve service must total 5 years before the officer is eligible for transfer to the Standby Reserve. *When active duty is not performed, the officer may be transferred to the Retired Reserve if eligible or discharged on the 6th anniversary of his date of appointment* unless he has an overriding contract which provides that he remain in a Reserve component for an additional period.

"(2) Officers in the above categories who were deferred from induction or delayed from entry on active duty in order to pursue their educational activities, fulfill their statutory service obligation as noted in (1) above. Such an officer who voluntarily assumed an obligation by signing an agreement to serve on active duty and/or to participate satisfactorily in the Reserve, will be required to fulfill the terms of the agreement or supplemental agreement (contractual obligation) even if such service extends beyond his statutory service obligation."[6] (Emphasis added.)

Since plaintiff did not perform active duty and apparently is not eligible for transfer to the Retired Reserve, the above-quoted regulation provides that he should be discharged on the "6th anniversary of his date of appointment."

The 6th anniversary of plaintiff's date of appointment occurred on January 23, 1973. He is, therefore, entitled to a discharge.

Since the pleadings, affidavits, etc., show that there is no genuine issue as to any material fact, and plaintiff is entitled to a judgment as a matter of law, plaintiff's motion for summary judgment is hereby granted. Defendants' motions to dismiss or for summary judgment are hereby denied.

It is therefore ordered that defendants are permanently enjoined from ordering plaintiff to active duty and are directed to process the discharge application of plaintiff favorably.

5. See also AR 601–140, II, 13 (April 1, 1970); AR 601–140, II, 13 (November 5, 1970).

6. Although the application form usually signed by applicants for the program contained an "overriding contract" clause, plaintiff's did not. There is, therefore, no contractual obligation that the Army can enforce.