UNITED STATES

v.

Private (E-2) Rock HUDSON, 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, U. S. Army, Headquarters and Company A, 4th Training Battalion, School Brigade, United States Army Signal School, Fort Gordon, Georgia 30905.

CM 434373.

U. S. Army Court of Military Review.

Sentence Adjudged 15 Dec. 1975.

Decided 23 Aug. 1976.

Appellate Counsel for the Accused: CPT Michael B. Dinning, JAGC; CPT John C. Carr, JAGC; MAJ Richard J. Goddard, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT John F. Schmutz, JAGC; CPT John F. DePue, JAGC; MAJ John T. Sherwood, Jr., JAGC.

OPINION OF THE COURT

DONAHUE, Judge:

Consistent with his guilty pleas, the appellant was convicted of larceny and forgery in violation of Articles 121 and 123, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 921 and 923, respectively.

I

In his first assignment of error the appellant challenges whether the court-martial had jurisdiction to try him.

On 20 February 1975 the appellant, a member of the Army National Guard, was ordered to Active Duty for Training (ADT). The orders, pursuant to the authority of 10

U.S.C. § 672(d) and AR 135–200, were with the consent of the appellant and the Governor of California. His active duty reporting date was 14 March 1975. In accordance with the standard terms of the form orders, the consent to active duty was for "21 weeks or upon completion of MOS training but not less than four months." Twenty-one weeks would have expired at midnight 7 August 1975.

On 10 July 1975 the appellant committed the offenses of which he stands convicted. Although he would have been released from active duty on 7 August 1975 or earlier if he had completed his MOS training, he was not prepared to be examined by that time and his graduation was successively rescheduled for 26 and 29 August and finally for 4 September 1975 when he passed the examination and was graduated.

During the course-completion delays, written orders had extended the appellant's active duty until 9 September 1975. On 2 September 1975 the appellant was restricted and flagged and on 4 September 1975 his commanding officer requested that the appellant be retained on active duty because he was undergoing an investigation relative to the offenses of which he now stands convicted.

Appellant's challenge to the jurisdiction of the court is grounded on two provisions of AR 135–200:

7a(9) (C4, 13 June 1967): Orders will specify the length of ACDUTRA . . expressed as a period of time (e. g., 12 days, 4 months).

14a (C2, 25 June 1965):

Extension of ACDUTRA tours.

a. Initial trainees who cannot complete the training cycle because of sickness, not due to misconduct, or who are enrolled in a service school for the purpose of attaining proficiency in a technical MOS for which potentially qualified, may, if the period of ACDUTRA remaining in the ACDUTRA tour is insufficient for completion of the training, have their tours extended in accordance with AR 612–200. [Superseded by AR 612–201.] The member must agree in writing to the exten-

sion by executing the following endorsement to the enlistment agreement. . .

Essentially, the appellant's argument is that he was ordered to a maximum of 21 weeks of active duty which expired about 7 August 1975 because the words "or upon completion of active duty" in his orders do not express "a period of time" as required by the regulation. He further argues that there had been no extension of his period of duty because the extension was not agreed to in writing by the appellant and was not consistent with AR 612–201.

We do not agree that retaining the appellant on active duty to complete his MOS training was in contravention of AR 135–200. 10 U.S.C. § 672(d) authorizes the Army to call a member of the National Guard to active duty provided the member and the governor consent. The required consents were obtained. AR 135–200 is a regulation whose stated purpose is to prescribe administrative procedures for active duty training of reservists and National Guardsmen. It would be unreasonable to interpret its clerical instructions as manifesting an intent to either expand or contract the jurisdictional authority granted by Congress in 10 U.S.C. § 672(d) and Article 2, UCMJ, 10 U.S.C. § 802.

We believe that the phrase "21 weeks or upon completion of MOS training . . ." does, indeed, express a "period of time." However, even if there exists a technical discrepancy between the wording of the orders and the wording of the regulation, we would not find such a discrepancy to be of jurisdictional dimensions.

The discrepancy does call appellant's status after the expiration of the stated period of 21 weeks into question; the record before us makes it clear that Army authorities on the scene felt that some type of further action was necessary to retain appellant on active duty. The record is also clear that those authorities failed to secure appellant's written consent to an extension of the period, as required by AR 612–201. We must decide whether appellant's amena-

bility to military law ended or continued when he had served the 21 weeks mentioned in his active duty orders.

There is a clear path of analysis on which we may proceed, one which is entirely consistent with appellant's status, his conduct and the realities of these unique circumstances. We begin with the proposition that the relationship of a reservist to the Army is a contractual one. *Mellinger v. Laird*, 339 F.Supp. 434 (D.C.Pa., 1972). The terms of that contract include relevant statutes and regulations. *Morse v. Boswell*, 289 F.Supp. 812 (D.C.Md., 1968), *aff'd* 401 F.2d 544 (1968), *cert. denied* 393 U.S. 1052, 89 S.Ct. 687, 21 L.Ed.2d 694 (1969); *Mellinger, supra.* The first term relevant here is that all National Guard enlistees such as appellant must *successfully* complete an initial period of active duty for training (basic) and such individual training (advanced) as is provided for by their agreement. Paragraphs 2b and 5, NGR 601–201, dated 1 May 1965 (formerly NGR 25–5). Appellant here consented to be ordered to active duty, 10 U.S.C. § 672(d), under orders which reaffirmed his contract obligation to complete his training successfully.

His entry upon that period of service made him subject to military criminal law. Article 2, UCMJ; paragraph 14, NGR 601–201, *supra.* As noted above, the question before us is whether that condition was terminated by the expiration of the 21-week period stated in his orders. If his active duty period did not end then, neither did his amenability to trial by court-martial. We hold that the active duty period did not end.

No citation of authority is required for the proposition that essential contract provisions relating to time are to be strictly construed and enforced. The time element in appellant's contract was stated disjunctively as a result of the administrative need to control carefully those in the special status of reserve trainees. However, the whole contract makes it clear that the period of training to be served was that necessary to complete successfully the advanced training to which appellant aspired. Had

he completed the course in 16 weeks, his release would have been authorized by the same language we now invoke to give meaning to the qualitative term of the contract, *successful* completion. Therefore, the appellant's status did not end with the expiration of 21 weeks. He had contracted to complete the course or suffer separation as untrainable and that contract was of continuing validity for a reasonable period of time. *Crowley v. United States*, 388 F.Supp. 981 (D.C.Wis., 1975).

This leaves the question of the effect of the Army's failure to secure written evidence of appellant's continued consent to train under his contract. Even if that is taken as a "failure to follow its own regulations" the effect on this case is nil. Such failures demand relief from wrongful actions taken, but judicial response to such failures does not and should not relieve persons of pre-existing military obligations. *Tobiczyk v. United States*, 381 F.Supp. 345, 349 (D.C.Mich., 1974). Appellant here suffered no activation or discharge to his injury as in the typical case. All that occurred as a result of the failure to add a piece of paper to the file was appellant's continuation in a status he had agreed to accept. He did not complain then, nor does he now assert that his intent then was other than to complete his obligation. Thus, the failure was *damnum absque injuria* and there is no status or loss to be restored. To say that a grant of criminal immunity is necessary to redress administrative oversight is to say that the power of the state to define crime and criminals is subject to defeasance by the inadvertence of its most minor minion.

It is clear that the relevant provisions of the regulation have not been inserted to protect an individual from his own limitations as in *United States v. Russo*, 23 U.S.C. M.A. 511, 50 C.M.R. 650, 1 M.J. 134 (1975). Furthermore, unlike the accused in *United States v. Kilbreth*, 22 U.S.C.M.A. 390, 47 C.M.R. 327 (1973), there is no question whether the appellant in the case *sub judice* was properly called to active duty.

We hold that the appellant was properly retained on active duty under the authority of his original orders until the completion of his MOS training on 4 September 1975. We also hold that the restriction and flagging action of 2 September 1975 and his commanding officer's request of 4 September 1975, resulted in appellant being properly retained on duty for trial. It follows that the appellant was a person subject to the Code at all relevant times before and during the present proceedings.

## II

In his second assignment of error the appellant argues that he has been prejudiced because the larceny specification alleges that the money obtained from Lovett's bank account was the property of Lovett.

Appellant, relying on the commercial law of Georgia, argues that the money was the property of the bank rather than the depositor. We do not decide which of the two parties was the owner in the commercial law sense because, even if the appellant is correct, he has established merely that an immaterial variance, not objected to at trial, exists. If such a variance exists the appellant has been in no way prejudiced.

We hold the second assignment of error to be without merit.

## III

In his third assignment of error (expanded on in a supplemental assignment of error) the appellant argues that he was prejudiced because the judge incorrectly advised him as to the maximum imposable punishment.

The appellant's attack is based on the premise that larceny and forgery are multiplicious for sentencing purposes. The staff judge advocate in his review and government appellate counsel have made the same assumption. Apparently all three parties reach this conclusion as the result of the per curiam opinion of another panel of this Court in *United States v. Cashwell*, 45 C.M.R. 748 (A.C.M.R.1972), *pet. denied*, 45

C.M.R. 928 (1972). We believe that case was wrongly decided and decline to follow it.

A much more persuasive opinion on the same issue has been written by Judge Early of the Air Force Court of Military Review in *United States v. Kirkle*, 50 C.M.R. 552 (A.F.C.M.R.1975), *pet. denied*, 50 C.M.R. 904 (1975). We adopt his reasoning.

We hold the third and supplemental assignments of error to be without merit because the larceny and forgery were not multiplicious for sentencing purposes in the case *sub judice*.

## IV

In his fourth assignment of error the appellant argues that he was prejudiced by the trial counsel's argument on sentence.

During the sentencing argument the trial counsel made the type of deterrence argument now condemned by *United States v. Mosely*, 24 U.S.C.M.A. 173, 51 C.M.R. 392, 1 M.J. 350 (1976). We have weighed the trial counsel's argument against the facts that the appellant was tried before a judge sitting without a jury and that after hearing this argument the judge imposed a lenient sentence.

We hold that the appellant was not prejudiced by the improper argument of trial counsel.

The findings of guilty and the sentence are affirmed.

Senior Judge CLAUSE and Judge COSTELLO concur.